UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOE O'NEAL,

    Petitioner,

vs.

R. A. HOREL; HARLAN WATKINS & DEPARTMENT OF CORRECTIONS,

    Respondents.

No. C 06-4746 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    This is a habeas case filed pro se by a state prisoner. The petition is directed to petitioner's "validation" as a gang member and consequent confinement in the Security Housing Unit ("SHU") at Pelican Bay State Prison. Petitioner contends in the petition that: (1) he was not given an opportunity to tell his side of the story regarding his validation; (2) he was not provided with "discovery" regarding the basis for his validation required by the consent decree in *Castillo v. Alameida*, No. C 94-2847 MJJ (PR) (N.D. Cal.), state law, and due process; and (3) conditions of his confinement in the SHU violated his Eighth Amendment rights.

    In the court's initial review order, the court dismissed petitioner's state law, *Castillo*, and conditions of confinement claims, and ordered petitioner to show cause why the due process claims should not be dismissed because they did not implicate the length of his confinement. Petitioner showed cause by alleging that he had forfeited time credits. The court ordered respondent to show cause why the petition should not be granted based on petitioner's due process claims. Respondent then filed an answer with a supporting

memorandum of points and authorities and exhibits. Petitioner filed a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

On June 13, 2005, the Institutional Gang Investigations Unit ("IGI") at the California Mens Colony, where petitioner was housed, interviewed petitioner and informed him of his pending validation as a member of the Black Guerilla Family ("BGF") prison gang. Resp. Ex. 5. During the interview, petitioner was informed that his validation was based upon three pieces of evidence, termed "source items" by prison officials. *Id.* First, a May 24, 2005 "chrono" stated that a prison guard had found in petitioner's possession a document from the Supreme Court of Arkansas with a hand-written "known quote" from the BGF called "I Stand Firm", which read as follows:

> I stand firm in the name and spirit of the fallen fire breathing dragons
> we the members of the fire breathing dragons who strive for
> impeccability will rage on into immortality. Long Live
> Long live the spirit of the fallen fire breathing dragons
> Long live the spirit of the greatful gaidi George Lester Jackson
> Long live the spirit of the Black Guerilla Family. I stand firm Sasa.

Resp. Exs. 5, 6. Second, a May 13, 2005 confidential memorandum stated that a confidential informant identified petitioner as a BGF member. *Id.* The third piece of evidence was a June 1, 2005 confidential "chrono" indicating that a confidential informant indicated that petitioner knowingly associated with a validated BGF member. *Id.* Prison officials indicated that the identity of the informants could not be revealed without endangering them or the security of the institution, and that the informants were deemed reliable because they had previously provided information that proved to be true. Resp. Ex. 6.

During the interview, the IGI informed petitioner of his right to appeal, and gave him an opportunity to "refute" the evidence against him. *Id.* Petitioner stated that the written material was in his property, but that his brother had mailed it to him and had written the "I Stand Firm" quote. *Id.* Petitioner further denied being a member of or affiliated with the BGF, or ever knowingly associating with a BGF member. *Id.* On August 15, 2005, the IGI

2

validated petitioner as a member of the BGF.  Resp. Ex. 4.

On September 1, 2005, the Institutional Classification Committee ("ICC"") held a hearing about petitioner's housing.  Resp. Ex. 2.  Petitioner attended and "fully participated" in the hearing, and he did not request "staff assistance."  *Id.*  Based on petitioner's gang validation, the ICC determined that petitioner should be placed in administrative segregation in the SHU for an indeterminate term.[1]  *Id.*  Petitioner acknowledged that he understood and concurred with the decision, and furthermore requested to be transferred to the SHU at PBSP as soon as possible.  *Id.*

Thereafter, petitioner unsuccessfully challenged this decision in administrative appeals to prison officials and in habeas corpus petitions filed in all three levels of the California Courts.  The parties do not dispute that petitioner has exhausted his administrative and state court remedies with respect to the claims raised herein.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the

---

[1] Petitioner had previously received a 9-month SHU term, in May 2005, for possessing a dangerous weapon in prison.  Resp. Ex. 2.  Petitioner does not challenge this disciplinary action in the instant petition, and there is no contention or indication that petitioner's subsequent gang violation was based on this rules violation.

3

first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000).

## DISCUSSION

The grounds for federal habeas relief remaining in this action are petitioner's first two claims that prison officials: (1) did not give him an opportunity to tell his side of the story when he was validated as a gang member and consequently placed in the SHU on administrative segregation for an indeterminate term; and (2) did not provide the "discovery" to which he was entitled in connection with such administrative segregation. Petitioner argues that these actions by prison officials violated state law, the settlement agreement in *Castillo*, and his federal right to due process. As noted above, in the initial order to show cause the court dismissed petitioner's claims under state law and *Castillo*

because they are not cognizable grounds for habeas relief in this court.  Thus, what remains to be considered is the federal due process dimension of petitioner's claims.

The hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself.  *Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (applying *Hewitt v. Helms*, 459 U.S. 460 (1983)).  However, a deprivations authorized by state law that are less severe amount to deprivations of a procedurally protected liberty interest if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e. give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance."  *Sandin v. Conner*, 515 U.S. 472, 477-487 (1995).  Prior to *Sandin*, the Ninth Circuit held that California statutes and prison regulations create a liberty interest in freedom from administrative segregation.  *See Toussaint*, 801 F.2d at 1098.  As *Toussaint* was decided before *Sandin*, however, it did not consider whether this administrative segregation amounted to a liberty interest of "real substance."

In *Wilkinson v. Austin*, 545 U.S. 209, 223-25 (2005), the Supreme Court held that indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, is a deprivation of "real substance" under *Sandin*.  Because petitioner's indefinite placement in the SHU also rendered petitioner ineligible for parole consideration in the instant case, it appears that his deprivation satisfies the "real substance" prong of *Sandin* and that he has a liberty interest in not being placed indefinitely in the SHU.  *Accord id.* at 224-25 (necessity of harsh conditions in light of danger that high-risk inmates pose to prison officials and other inmates does not diminish conclusion that conditions rise to a liberty interest in their avoidance).

*Toussaint* described the process due when prison officials determine whether a prisoner is to be segregated for administrative reasons.  Due process requires compliance with the following procedures: (1) prison officials must hold an informal nonadversary

5

hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered, and (3) the prisoner must be allowed to present his views. *Toussaint*, 801 F.2d at 1100. Due process does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, a written decision describing the reasons for placing the prisoner in administrative segregation or disclosure of the identity of any person providing information leading to placement of a prisoner in administrative segregation. *Id.* at 1100-01; *accord Wilkinson*, 545 U.S. at 228-29 (determining that prisoners are constitutionally entitled only to the informal, no-adversary procedures set forth in *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1 (1979), and *Hewitt v. Helms*, 459 U.S. 460 (1983), prior to assignment to "supermax" facility).

      The records of petitioner's placement in administrative segregation indicate that petitioner received all of the foregoing procedures required by due process. The ICC held a hearing on September 1, 2005, prior to deciding to place him in the SHU for an indeterminate term. Resp. Ex. 2. Petitioner was informed prior to this hearing of the reason for his placement in the SHU indefinitely: on June 13, 2005, the IGI informed petitioner that his validation as a gang member was pending, and then on August 15, 2005, the IGI informed petitioner that he had been validated. Resp. Exs. 4, 5. Finally, petitioner was allowed to present his views on at least two occasions. First, at the June 13, 2005 interview with the IGI, petitioner was allowed to present his views regarding his validation as a gang member, and he denied such membership in or association with the BGF, denied writing the note containing the "I Stand Firm" quote, and denied the confidential information relied upon by the IGI. Resp. Ex. 5. Second, petitioner was allowed to present his views at the ICC hearing on September 1, 2005 as to his placement in the SHU on administrative segregation, and he acknowledged the decision and requested his transfer to the SHU as soon as possible. Resp. Ex. 2. Petitioner presents no evidence contradicting these records. Petitioner's claim that his right to due process was violated

6

because he did not have an opportunity to present his views must be denied because the records of his gang validation and consequent placement in the SHU demonstrate that he did in fact have opportunities to present his views, and that the other procedures required by due process were followed.

Petitioner's other claim -- that his right to due process was denied because he was not provided the "discovery" he requested[2] – must also be denied because, as discussed above, due process does not entitle inmates to discovery when they are placed in administrative segregation. *See Toussaint*, 801 F.2d at 1100-01. Petitioner also complains that he was not given a hand-writing expert to assist him in refuting the gang validation evidence. Due process also does not entitle him to such an expert. *See id.*

In his traverse, petitioner correctly argues that due process also imposes a minimum evidentiary requirement. The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons. *See Toussaint*, 801 F.2d at 1104. This standard applies to placement in a SHU for gang affiliation. *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003). The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. *See Toussaint*, 801 F.2d at 1105 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). The relevant question is whether there is any evidence in the record that could support the conclusion reached. *See id.*

In *Bruce* the Ninth Circuit found that any one of the three pieces of evidence supporting the gang validation and administrative segregation in that case -- a sheriff's department report that prisoner was a gang member, a probation report that prisoner's codefendant was a gang member, and a statement from a prison informant -- would satisfy the "some evidence" requirement of due process. 351 F.3d at 1287-88. Here, as in *Bruce,* three pieces of evidence supported petitioner's gang validation and consequent placement

---

[2]Petitioner describes the "discovery" he wanted as including explanations for how the written note and confidential information connect him to the gang activity and threaten the security of the prison, and how the confidential informants knew petitioner.

in administrative segregation. First, a prison guard found a written note in petitioner's possessions that quoted a BGF writing. Resp. Ex. 6. Second, a confidential informant identified petitioner as a gang member. *Id.* Third, a confidential informant identified petitioner as associating with a known gang member. *Id.* As in *Bruce*, any one of these pieces of evidence, and certainly all three, satisfies the "some evidence" standard of due process.

Petitioner denies having written the note found in his possession and surmises that the informants may lack credibility and reliability. Ascertaining whether the some evidence standard is satisfied does not, however, require independent assessment of the credibility of witnesses or weighing of the evidence. *Toussaint*, 801 F.2d at 1105. Moreover, although the Ninth Circuit requires indicia of reliability for confidential informants in the context of *disciplinary* segregation, *see Cato v. Rushen*, 825 F.2d 703, 705 (9th Cir. 1987), there is no such requirement in the Ninth Circuit, and certainly not in any "clearly established" Supreme Court precedent, for administrative segregation. In any event, there are indicia of reliability in this case insofar as the prison records indicate that the informants relied upon in this case had previously supplied information that proved to be true, and prison officials stated that the informants' confidentiality was necessary for security reasons. Resp. Ex. 6; *cf. Zimmerlee v. Keeney*, 831 F.2d 183, 186-87 (9th Circ. 1987) (holding that confidential informant statements may be relied upon for disciplinary segregation if confidentiality is necessary for prison safety and if, inter alia, informant previously supplied accurate information).

Under these circumstances, the evidentiary as well as procedural requirements of due process have been met. The state courts' rejection of petitioner's claims was not contrary to or an unreasonable application of federal law, and petitioner is not entitled to habeas relief.

//
//

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 13, 2009

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.06\ONEAL746.RUL.wpd